# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| ALONZO JR. OF THE FAMILY SANFORD, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Civil Action No.  5:24-cv-01406-CLS |
| SARAH HURST, through Region 4 IV-D Agency, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

On October 16, 2024, a plaintiff named Alonzo Sanford, Jr., who is proceeding *pro se*, and who styled himself in the caption of his complaint as "Alonzo Jr., of the Family Sanford," commenced an action against Sarah Hurst in her official capacity as Director of the Region 4 IV-D Agency for violation of his rights under the First, Fourth, Fifth, Seventh, and Thirteenth Amendments to the United States Constitution.  He also asserts a "*Monell* claim," a claim for collusion resulting in violation of his constitutional rights, a claim for violation of the separation of powers doctrine, and a constitutional claim for dissemination of false advertisements. Plaintiff asserts all claims pursuant to 42 U.S.C. § 1983, and all claims arise from

defendant's efforts to collect child support through Title IV-D of the Social Security Act.[1]  (Doc. 1).

The case initially was assigned to Magistrate Judge Herman N. Johnson, Jr., who, on April 28, 2025, ordered plaintiff to show cause why his complaint should not be dismissed for lack of subject matter jurisdiction.  (Doc. 16).  Plaintiff responded to the order (Doc. 17), but his response did not, in the opinion of Judge Johnson, establish the existence of federal subject matter jurisdiction. Judge Johnson determined that the parties' consent to his dispositive jurisdiction could not be obtained in a timely manner, as required by 28 U.S.C. § 636(c).  Therefore, pursuant to the General Order for Referral of Civil Matters to the United States Magistrate

---

[1] Congress enacted Title IV-D of the Social Security Act

> [f]or the purpose of enforcing the support obligations owed by noncustodial parents to their children and the spouse (or former spouse) with whom such children are living, locating noncustodial parents, establishing paternity, obtaining child and spousal support, and assuring that assistance in obtaining support will be available under this part to all children (whether or not eligible for assistance under a State program funded under part A) for whom such assistance is requested . . . .

42 U.S.C. § 651.  Any state that follows the requirements of the Act may request the Secretary of the Treasury to certify for collection delinquent child support payments in the same manner as the Internal Revenue Service collects unpaid tax obligations.  42 U.S.C. § 652(b).  To assist in those efforts, the statute enables the Secretary to establish a Federal Parent Locator Service which, "for the purpose of establishing parentage or establishing, setting the amount of, modifying, or enforcing child support obligations," may collect and transmit to authorities information about individuals who may bear child support liability, including Social Security numbers, addresses, employment information, wages, income, assets, and debts.  42 U.S.C. § 653(a)(1)-(2).  The Secretary also may withhold from an individual's income tax refund an amount equivalent to any past-due child support payments.  42 U.S.C. § 664(a).

Judges of the Northern District of Alabama, entered on January 2, 2015, this case was randomly reassigned to the undersigned. (Doc. 18). Following review of the complaint, Judge Johnson's Order to Show Cause, and plaintiff's response, the court concludes that the claims asserted in plaintiff's complaint are, in essence, an impermissible challenge to a state court child support judgment. Accordingly, for the following reasons, the court will **DISMISS** plaintiff's claims for lack of jurisdiction.

"Federal courts are courts of limited jurisdiction" and, as such, they possess the power to hear cases only as authorized by the Constitution or laws of the United States. *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

The court may dismiss the case for lack of jurisdiction without a motion from defendant, and without regard to plaintiff's payment of the filing fee. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (citing *United States v. Cotton,* 535 U.S. 625, 630 (2002)) ("When a requirement goes to subject-matter jurisdiction, courts are

obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."); *Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1023 (11th Cir. 2021) (citing *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 548 (2019); *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1264 (11th Cir. 2021)) ("'[C]ourts must consider' questions of subject-matter jurisdiction *sua sponte* if not raised by the parties."); *Dukes v. Canal Woods LLC PH*, No. CV 122-086, 2022 WL 4241280, at *1-2 (S.D. Ga. Sept. 13, 2022), *report and recommendation adopted*, No. CV 122-086, 2022 WL 6184921 (S.D. Ga. Oct. 7, 2022) (dismissing case for lack of subject matter jurisdiction despite payment of the filing fee); *LH Props. II, LLC v. Absolute Med. Weight Loss*, No. 1:18-CV-01051-CAP-AJB, 2018 WL 1833253, at *3 (N.D. Ga. Mar. 14, 2018), *report and recommendation adopted*, No. 1:18-CV-1051-CAP, 2018 WL 1858262 (N.D. Ga. Mar. 29, 2018) ("Even if the Court is incorrect in granting Pearson IFP status, and thus is not required to conduct a mandatory frivolity review under § 1915, the Court still has a duty to insure that subject matter jurisdiction exists, regardless of whether one or more of the Defendants proceed IFP or pay the filing fee.").

The plaintiff bears the burden of persuasion on the question of whether this court possesses subject matter jurisdiction. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)). In

assessing whether plaintiff has satisfied that burden, the court must liberally construe his *pro se* complaint, and hold it to a less stringent standard than pleadings drafted by attorneys. *Taveras v. Bank of Am., N.A.*, 89 F.4th 1279, 1285 (11th Cir. 2024) (citing *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). However, the court may not "act as de facto counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (citing *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

To support his First Amendment claim (Count 1), plaintiff asserts defendant violated his rights to free association and assembly by compelling his involuntary participation in the IV-D program, and threatening to arrest him or suspend his driver's license. (Doc. 1, ¶¶ 34-37).

To support his Fourth Amendment claim (Count 2), plaintiff alleges defendant violated the security of his property by permitting contractors "to search for, obtain, and then use" his Social Security number, which "convert[ed him] into property" and enabled authorities to "use automated systems to search for then locate and seize [his] honestly acquired money and other assets in relation to a non-custodial parent." (*Id.* ¶ 39). He claims defendant enabled authorities to acquire his Social Security number and income without a warrant or probable cause. (*Id.* ¶¶ 40-43).

5

To support his Fifth Amendment Due Process claim (Count 3), plaintiff alleges defendant permitted contractors to obtain his Social Security number without affording him an opportunity to be heard or informing him how his Social Security number would be used. (*Id*. ¶¶ 44-47).

To support his Seventh Amendment Claim (Count 4), plaintiff states:

> Entering into contracts with courts was for the sole purpose of obtaining colorable authority under chancery jurisdiction synonymous and interchangeable with equity. This contracted court deprived Plaintiff Alonzo of my 7th Amendment right to trial by jury on the basis that IV-D complaints are neither civil nor criminal and the SSN was secretly used to convert me. The equity court, now the notorious Star Chamber dispensed remedy in favor of Region 4 in return for payment therefrom.

(*Id*. ¶ 47).[2] This conduct allegedly violated plaintiff's "inherent rights to [be] equally free and independent." (*Id*. ¶ 48).

To support his Thirteenth Amendment claim (Count 5), plaintiff alleges he was forced to work, under the threat of jail or physical restraint, in order to satisfy his child support obligations. (Doc. 1, ¶ 50). He also alleges defendant "converted [him] to the status of 'non-custodial parent[']  which identifies only as property not a Genesis 1; Article I Sec. 1 man by nature equally free and independent," thereby

---

[2] The court notes plaintiff's complaint contains two paragraphs numbered 47. The paragraph referred to in this citation is on page 20, just below the heading "Count 4. 42 U.S.C. § 1983 – Right to a Trial by Jury in Violation of 7th Amendment for the Constitution of the United States of America." (Doc. 1, at 20).

subjecting him "to slavery and involuntary servitude in violation of the 13th Amendment . . . ."  (*Id*. ¶ 51).

To support his "*Monell* claim" (Count 6), plaintiff alleges defendant should be held liable under 42 U.S.C. § 1983 for her own premeditated Constitutional violations, as she acted "pursuant to the customs, policies, practices, and procedures of" Region 4.  (*Id*. ¶ 54; *see also id*. ¶¶ 52-53).

To support his claim for collusion to violate constitutional rights (Count 7), plaintiff alleges the state, the federal government, Region 4, the executive branch, and the judicial branch colluded to deprive him of his constitutional rights, implying "the existence of fraud, the employment of fraudulent means, and of lawful means for the accomplishment of an unlawful purpose[]."  (*Id*. ¶ 56).

To support his claim for violation of separation of powers (Count 8), plaintiff alleges defendant, an executive branch employee, colluded with the judicial branch in operating the IV-D program and its contracted service providers.  (*Id*. ¶ 58). Region 4's plan for operating under IV-D allegedly "was a flagrant violation[, as] the legislative, judicial, and executive powers shall forever remain separate and distinct, and no person discharging the duties of one shall at the same time exercise the functions of either of the others."  (Doc. 1, ¶ 59).

To support his claim for dissemination of false advertisements in violation of his constitutional rights (Count 9), plaintiff alleges the IV-D program falsely advertised itself as providing child support services, as no individual or family is guaranteed rights or benefits under the program, and the statute does not provide a private right of action. (*Id.* ¶¶ 62-67). He also alleges "that as a man equally free and independent [he is] not legally obligated to provide support to the public treasury and taxpayers." (*Id.* ¶ 69).

Plaintiff also includes the following allegations to elucidate how defendant allegedly converted him to property:

> 71. To perpetuate the principles of free government, insure justice to all, preserve peace, promote the interest and happiness of the citizen and of the family, and transmit to posterity the enjoyment of liberty, we the people of Georgia, relying upon the protection and guidance of Almighty God, do ordain and establish this Constitution.
>
> 72. Quoting Genesis 1; "Then God said, Let us make man in our image, in our likeness." Man is the adult male sex of the human species above the age of puberty. *Blacks Law Rev*. 4th Ed. P. 1112. Noncustodial parents are not crated by Genesis 1; rendering it *ens legis*, a creature of the law *i.e.*, IV[-]D of the Act; an artificial being, as contrast[ed] with a human being. Applied to corporations, considered as deriving their existence entirely from the law. *Black's Law Rev*. 4th Ed. P. 624.

(*Id.* ¶¶ 71-72) (footnotes omitted). He claims IV-D's classification of him as a non-custodial parent excludes him from being a man under Genesis 1. (*Id.* ¶ 73).

Plaintiff asks for $1,000,000.00 in compensatory, punitive, and other damages for each violation he alleges; injunctive relief to enjoin false advertisement and terminate his involvement in IV-D services; and costs and fees. (*Id.* at 31-32).

Because plaintiff's claims effectively seek relief from a state court order to pay child support, the *Rooker-Feldman* doctrine provides a jurisdictional bar to the claims. *See, e.g.*, *Efron v. Candelario*, 110 F.4th 1229, 1235 (11th Cir. 2024) (characterizing the *Rooker-Feldman* doctrine as "a jurisdictional rule"). That doctrine "prohibits federal courts from adjudicating cases brought by state-court losing parties challenging state-court judgments." *Reed v. Goertz*, 598 U.S. 230, 235 (2023). *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine represents "a straightforward application of the statutes establishing [federal court] jurisdiction," as "federal district courts cannot review or reject state court judgments rendered before the district court litigation began." *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021).

Though courts have emphasized the doctrine's narrow scope, it applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi*

9

*Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Lance v. Dennis*, 546 U.S. 459, 466 (2006) ("The doctrine applies only in limited circumstances."); *Behr*, 8 F.4th at 1212 ("*Rooker-Feldman* . . . will almost never apply."). Moreover, the plaintiff need not explicitly characterize his claims as an appeal of a state court judgment to fall within the doctrine. As the Eleventh Circuit explained in *Behr*:

> The injury must be caused by the judgment itself. Period. And considering whether a claim is "inextricably intertwined" with a state court judgment is not a second prong of the analysis; it is merely a way of ensuring that courts do not exercise jurisdiction over the appeal of a state court judgment simply because the claimant does not call it an appeal of a state court judgment.

8 F.4th at 1212.

District courts across the country, including some within the Eleventh Circuit, have relied upon the *Rooker-Feldman* doctrine to dismiss constitutional claims similar to those plaintiff raises here as impermissible challenges to a state court judgment. *See Lewis v. 22nd Jud. Cir. Ct.*, No. 2:25-CV-10741, 2025 WL 864264, at *2 (E.D. Mich. Mar. 19, 2025) (*Rooker-Feldman* barred due process, Contracts Clause, and Thirteenth Amendment claims as those claims "relate[d] to a final child support order issued in state court"); *John of the Family Springer v. Stack,* No. 24-CV-6672 (LTS), 2025 WL 1115022, at *3 (S.D.N.Y. Apr. 14, 2025) (citations omitted) ("To the extent Plaintiff seeks review of a state court judgment, ordering him to pay child support, this Court lacks subject matter jurisdiction to hear such a

claim, under the *Rooker-Feldman* doctrine. . . . Even where a plaintiff argues that his constitutional rights were violated with respect to the state court proceedings regarding a child support order, the *Rooker-Feldman* doctrine applies."); *Dietz v. Dep't of Soc. Servs. Child Support*, No. 4:23-CV-04114-RAL, 2024 WL 1882165, at *12 (D.S.D. Apr. 30, 2024), *appeal dismissed sub nom. Dietz v. Dep't of Soc. Servs.,* No. 24-2423, 2024 WL 5319097 (8th Cir. July 15, 2024) (citations omitted) (dismissing, pursuant to the *Rooker-Feldman* doctrine, a compelled association claim based upon allegations that "the IV-D franchise is in fact a private business for profit who offers and sells IV-D services to customers and that [plaintiff] was compelled to become a customer of the IV-D franchise against his will") (cleaned up); *Martin v. Taylor Cnty.*, No. 1:23-CV-00052-H-BU, 2023 WL 11052640, at *6-7 (N.D. Tex. Dec. 22, 2023), *report and recommendation adopted*, No. 1:23-CV-052-H, 2024 WL 965298 (N.D. Tex. Mar. 6, 2024) (*Rooker-Feldman* barred a due process claim and a request to terminate IV-D proceedings as those claims inextricably intertwined with a state-court child support judgment); *Cardenas v. Region 9 IV-D*, No. 5:23-CV-01220-JWH-JC, 2023 WL 9004996, at *8 (C.D. Cal. Nov. 7, 2023), *report and recommendation adopted*, No. 5:23-CV-01220-JWH-JC, 2023 WL 9002726 (C.D. Cal. Dec. 28, 2023) (*Rooker-Feldman* barred a request to terminate IV-D services, as the plaintiff "plainly seeks to undo the state court

judgments awarding child support against him"); *Sanders-Bey v. Massachusetts Dep't of Revenue*, No. 5:20-CV-533-PGB-PRL, 2021 WL 11644427, at *3 (M.D. Fla. Mar. 29, 2021), *report and recommendation adopted*, No. 5:20-CV-533-PGB-PRL, 2021 WL 11644425 (M.D. Fla. Apr. 15, 2021) (citations omitted) ("[T]his Court has concluded that the *Rooker-Feldman* doctrine bars attempts to challenge state court child support judgments."); *Baylor v. Eto*, No. 19-CV-442 (MJD/HB), 2019 WL 3470798, at *4 (D. Minn. May 30, 2019), *report and recommendation adopted*, No. 19-CV-0442 (MJD/HB), 2019 WL 3456841 (D. Minn. July 31, 2019) (plaintiff's request to "prohibit Defendants from 'enforcing or moving on any provisions of' Title IV-D of the Social Security Act" represented a challenge to a state court child support judgment); *Troy of Fam. Carslake v. Dep't of Child Support Servs.*, No. 18-CV-06176-YGR, 2019 WL 2142036, at *7 (N.D. Cal. May 16, 2019) (dismissing 13 constitutional claims filed pursuant to 42 U.S.C. § 1983 as barred by *Rooker-Feldman* when all of the plaintiff's allegations related to a judicial "determination obligating plaintiff to pay child support and defendants' efforts to enforce that obligation," and plaintiff requested the court to "terminate the Section IV-D child support collection case against him").

Plaintiff's complaint alleges defendant has "exact[ed his] honestly acquired income in relation to a non-custodial parent under IV-D functions." (Doc. 1, ¶ 9).

He references a "$35.22 transaction" (*Id*. ¶¶ 14, 64), and Region 4's delegation of "coercive collective functions of the IV-D program." (*Id*. ¶ 29; *see also id*. ¶ 53 ("HURST through Region 4, delegated functions of the IV-D program to contracted courts with whom a contract was entered and purchased coercive IV-D collection services therefrom.")). He states he "was forced to work to pay Region 4 as required by IV-D." (*Id*. ¶ 50). He asserts that "as [a] man equally free and independent [he is] not legally obligated to provide support to the public treasury and taxpayers." (*Id*. ¶ 69).

Plaintiff also alleges defendant compelled the use of his Social Security number "for the sole purpose of exacting [his] honestly acquired income without a warrant. . . ." (Doc. 1, ¶ 42; *see also id*. ¶¶ 31, 39, 40-41, 45, 47). To that end, plaintiff alleges defendant "hunt[ed] for [him] under the state and federal Parent Locator System," converted him to a non-custodial parent, and punished him as a non-custodial parent by means of:

- Liens on property;
- Offset of unemployment compensation payments;
- Seizure and sale of property;
- Reporting arrearages to, [*sic*] credit agencies;
- Garnishment of wages;

13

- Seizure of State and Federal income tax refunds;

- Revocation of various types of licenses (driver's, business, occupational, recreational);

- Attachment of lottery winnings and insurance settlements of noncustodial parents;

- Authority to seize assets of noncustodial parents held by public or private retirement funds and financial institutions; and

- State and or Federal imprisonment, fines, or both.

(Doc. 1, at 18-19, ¶ 47).³

All of those allegations describe efforts to collect money from plaintiff, and the IV-D statute permits its agencies to pursue collection *only after a state court has entered a judgment.* See 42 U.S.C. § 652(b) ("No amount may be certified for collection under this subsection except the amount of the delinquency under a court or administrative order for support and upon a showing by the State that such State has made diligent and reasonable efforts to collect such amounts utilizing its own collection mechanisms, and upon an agreement that the State will reimburse the Secretary of the Treasury for any costs involved in making the collection."). Thus, plaintiff's complaint challenges the validity of a state court child support judgment, and the *Rooker-Feldman* doctrine bars his claims.

---

³ *See supra* note 2.

The court rejects plaintiff's preemptive attempt to avoid the *Rooker-Feldman* bar by alleging that he complains about the actions of "a contractor of an alone detached and disconnected business for profit operating from within the executive branch performing administrative duties thereof in return for payment therefrom . . . ." (Doc. 1, ¶ 25; *see also id.* ¶¶ 26 (alleging distinctions between the administrative functions performed by the IV-D agency and contractors from judicial functions performed by a court), 28 ("The certain designation of a contractor is an absolute exclusion of a judge.")). Though plaintiff complains of actions taken by the IV-D agency and any contractors it may have employed, all of his allegations implicate the validity of a state-court child support order.

Other district courts have rejected, or at least questioned, similar arguments from *pro se* plaintiffs attempting to avoid the *Rooker-Feldman* bar.

In *Tucker v. McBrien*, No. 2:23-CV-00526-DAD-CKD-PS, 2023 WL 4848496 (E.D. Cal. July 28, 2023), *report and recommendation adopted,* No. 2:23-CV-00526-DAD-CKD-PS, 2023 WL 6215370 (E.D. Cal. Sept. 24, 2023), the *pro se* plaintiff argued, in response to a motion to dismiss his claims for "violations of his constitutional rights in connection with child support orders and payments," that "the *Rooker-Feldman* doctrine does not apply because 'Family Court is a Title IV-D Administrative office of Title IV-D of the Public Health Services Act,'" and

15

"defendants ruled upon administrative proceedings and 'made no child support orders in state superior court.'" *Id.* at *1, *3. The court rejected that entreaty, as "*Rooker-Feldman* applies to a final order in a family court." *Id*. at *3.

In *Troy of Family Carslake v. Department of Child Support Services*, No. 18-CV-06176-YGR, 2019 WL 2142036 (N.D. Cal. May 16, 2019), the court applied *Rooker-Feldman* to dismiss the *pro se* plaintiff's constitutional claims challenging court-ordered child support payments and requesting the termination of IV-D collection proceedings against him. The court applied *Rooker-Feldman* despite the plaintiff's assertion that "Defendants 'did voluntarily enter into an IV-D contract with [DCSS], the extension of the Office of Child Support Enforcement (OSCE) to provide IV-D magistrate and probation services as an administrative franchise court, NOT a constitutional court.'" *Id*. at *2 (alteration and emphasis in original).

In *Cervantes v. Noble*, No. CV-24-00501-TUC-RM, 2025 WL 1094311 (D. Ariz. Apr. 11, 2025), the *pro se* plaintiff argued

> *Rooker-Feldman* does not bar his claims because it "does not bar a man oppressed by IV-D contractor of an alone, detached, and disconnected organizational unit operating in the state from within the executive branch performing the administrative duties of the IV-D agency in return for payment therefrom." . . . He insists that this case does not implicate "domestic relations issues," and he makes other, largely incoherent and irrelevant arguments. . . .

16

*Id*. at *3 (ellipses supplied). The district court observed *Rooker-Feldman* likely barred the plaintiff's claims to the extent the plaintiff "seek[s] review over final state court judgments regarding his child support payments." *Id*. at *4 n.4. Even so, as "the incoherent nature of Plaintiff's Complaint makes it difficult to determine whether the *Rooker-Feldman* doctrine is applicable," the district court declined to dismiss on those grounds. *Id.* at *4. Rather, it dismissed with leave to amend for failure to state a claim, because the complaint did not "establish a clear link between Defendant's conduct, which allegedly involved providing 'step by step instructions to IV-D personnel,' and any violation of Plaintiff's federal rights." *Id.*[4]

---

[4] Plaintiff also preemptively attempts to avoid characterization as a "sovereign citizen" by asserting:

> 18. When applying the plausibility standard to this is not a sovereign citizen pleading, Plaintiff Alonzo provides the following sufficient factual matters as true and plausible on its face:
>
> 19. The FBI defines sovereign citizens as anti-government extremists who [are] "sovereign" from the United States. As a result, they believe they do not have to believe that even though they physically reside in this country, they are separate or answer to any government authority, including courts, taxing entities, motor vehicle departments, or law enforcement. FBI – The Sovereign Citizen Movement.
>
> 20. On its face, my complaint is not filled with "any" legal arguments of the sovereign citizen variety. As this Court said in a previous case, courts routinely, summarily, and firmly reject sovereign citizen legal theories as frivolous. *Phillips v. Life Prop. Mgmt. Servs.*, LLC, No. 1:21-cv-821, 2021 U.S. Dist. LEXIS 55210, *21 (N.D. Ga. Mar. 23, 2021) (Grimberg, J) (citing *United States v. Sterling*, 738 F.3d 228, 233 (11th Cir. 2013)[)]. This action does not address sovereign citizen theories and should not be summarily rejected as such.
>
> 21. Wherefore, Plaintiff Alonzo is not a sovereign citizen or anti-

In summary, plaintiff's constitutional claims in this case effectively attempt to challenge the collection of a state court's child support judgment, thereby invoking the *Rooker-Feldman* bar. In plaintiff's show cause response, he argues *Rooker-Feldman* does not apply because of the allegedly contractual and administrative nature of the IV-D Plan. (Doc. 17, at 10-13). However, that argument fails for the reasons previously discussed.[5]

Moreover, if state court child support proceedings remain pending against plaintiff, the domestic relations exception to federal jurisdiction would bar his claim. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) ("[T]he domestic relations

---

government extremist[] who believes that even though I physically reside in America I am separate or sovereign from the United States of America. I am not and have not used "paper terrorism" tactics of the movement to retaliate against, harass, or intimidate, any public official, I make no claim to the indigenous Moorish movement and as a matter of law, my § 1983 claims cannot be rejected as frivolous.

(Doc. 1, ¶¶ 18-21).

Because plaintiff paid the filing fee, this court has not evaluated his complaint for frivolity pursuant to 28 U.S.C. § 1915(e)(2)(B). Moreover, the allegations of plaintiff's pleadings and the applicability of the *Rooker-Feldman* doctrine dictate the viability of plaintiff's claims, not plaintiff's self-characterization (or non-characterization) as a sovereign citizen. *See Henry v. Fernandez-Rundle*, 773 F. App'x 596, 597 (11th Cir. 2019) ("Whether Henry wishes to call himself a sovereign citizen or not, it is clear that his complaint is premised on the same types of legal theories advanced by other sovereign citizens . . . .").

[5] The court further notes Sanford characterizes his show cause response as a response to "HURST's Dispositive Motion to Dismiss My Complaint with Prejudice pursuant to Ga. Code § 19-11-3(2); § 19-11-9.1(a); § 19-1-9.1(3)(b); § 19-15 (6.1), and § 1-3-1(b); 45 C.F.R. § 301.10; 45 C.F.R. § 302.12(a)(1)(i), (2) and (3), and Memorandum of Law in Support Thereof." (Doc. 17, at 1). However, Hurst has filed no such motion in this case, and Sanford has not yet served Hurst with the complaint. It appears Sanford may have copied the brief of a plaintiff in a different case, as his brief twice refers to "Plaintiff Terry." (*Id.* at 12, 14).

exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees."); *Richards v. Harris*, No. 8:23-CV-269-SDM-JSS, 2023 WL 6940278, at *3 (M.D. Fla. July 25, 2023), *report and recommendation adopted,* No. 8:23-CV-269-SDM-JSS, 2023 WL 6940271 (M.D. Fla. Sept. 11, 2023) ("[T]o the extent that the child support proceedings for which his allegations relate to are still ongoing, Plaintiff has been previously informed that such allegations fall within the domestic relations exception to federal court jurisdiction.").

For all the foregoing reasons, the court concludes that it lacks subject matter jurisdiction over plaintiff's claims. The court will enter an appropriate final judgment contemporaneously herewith.

**DONE** and **ORDERED** this 20th day of May, 2025.

_____
Senior United States District Judge